IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDE F. REYNAUD, JR., and CORDELL HAYMON, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-03731-N-BG |
| CERTAIN UNDERWRITERS OF LLOYD'S OF LONDON, | § § § § | |
| Defendant. | § § | |

**UNDERWRITERS' RESPONSE TO RECEIVER'S BRIEF AS AMICUS CURIAE IN OPPOSITION TO UNDERWRITERS' MOTION TO DISMISS HAYMON'S FIRST AMENDED COMPLAINT**

Certain Underwriters at Lloyd's of London, Arch Specialty Insurance Company, and Lexington Insurance Company (collectively, "Underwriters")[1] file this Brief in Response to Receiver's Brief as Amicus Curiae and would show:

*Preliminary Statement*

The Receiver has no dog in this fight. The Receiver already has settled and dismissed with prejudice all of his claims against Haymon in exchange for Haymon's payment of $2 million.[2] Therefore, a ruling that Haymon is not entitled to coverage would have no impact on the Receiver. More importantly, as this Court knows, the Receiver and Underwriters have entered into a global settlement agreement whereby Underwriters agreed to pay the Receiver $65 million in exchange for the Receiver's promise to "fully release any and all insureds under the

---

[1] "Underwriters" are Lloyd's of London Underwriting Members in Syndicates 2987, 1886, 2488, 1084, 4000, 1183, 1274, Arch Specialty Insurance Company, and Lexington Insurance Company.

[2] *See* Doc. 57 (Cordell Haymon's Response to Defendant's Motion to Dismiss) at 1.

1

relevant policies"[3] and to fully release any and all claims against Underwriters and to the Policies' proceeds. Thus, regardless of the applicability of the Policies' IvI exclusions, the Receiver does not have any further claims to or interest in the Policies' proceeds. As such, he has no interest in the outcome of this case and this Court should disregard his amicus brief.[4]

Of more immediate concern, the Receiver is simply wrong when he argues that the insured versus insured exclusion does not bar Haymon's claim. The Fifth Circuit, this Court, and the Receiver himself have all stated unequivocally that the Receiver has "stepped into the shoes" of the Stanford Entities for purposes of this equitable receivership. Indeed, the Receiver has made hundreds of claims under the insurance policies Underwriters issued to the Stanford Entities (the "Policies"),[5] contending that he is an insured (*i.e.*, the Companies) entitled to coverage under the Policies. Incredibly, the Receiver now argues that the insured versus insured exclusion should not apply here, because the Receiver is somehow *not* an insured when it comes to the lawsuit he filed against Cordell Haymon (the "Receiver's Action" or the "Receiver's Complaint").[6]

The Receiver wants this Court to believe he can step in and out of the shoes of the Stanford Entities at his convenience. Not true. The Fifth Circuit and numerous other federal courts have made clear that federal equity receivers (such as Janvey) stand *exclusively* in the

---

[3] *See* Docs. 133 (Notice of Settlement and Stipulated Order Staying All Deadlines), 135 (Underwriters' Brief in Support of Emergency Motion to Enforce Settlement Agreement), *Underwriters v. Janvey*, Case No. 3:09-cv-1736.

[4] Although the Receiver disputes whether the Receiver must dismiss his claims against individual insureds pursuant to the terms of the global settlement, he does not dispute that the global settlement would require that he dismiss any and all claims against Underwriters or the Policies's proceeds. *See* Doc. 137 (Defendant's Response in Opposition to Underwriters' Emergency Motion to Enforce Settlement and Cross-Motion to Strike Underwriters' Emergency Motion) at 6.

[5] The Policies Underwriters issued to the Stanford Entities include a D&O Policy, Professional Indemnity Policy ("PI Policy"), and an Excess Policy (collectively, the "Policies").

[6] The full cite for the Receiver's Action is *Janvey v. Adams & Reese, LLP*, No. 3:12-cv-495 (N.D. Tex. Aug. 4, 2014).

shoes of the entities in receivership. These courts recognize no distinction between a federal equity receiver and the entities in receivership. Accordingly, the Receiver's Action against Haymon is a claim brought by the Stanford Entities acting through Janvey.

The Receiver's fallback position is likewise flawed. The Receiver contends that, even if the exclusion applies, the Receiver should benefit from an exception to the exclusion for receivers in a bankruptcy proceeding. The Stanford Receivership, however, is not a bankruptcy proceeding. In fact, the Receiver has opposed multiple attempts to convert this receivership into a bankruptcy. Moreover, for purposes of an insured versus insured exclusion, there is a significant distinction between bankruptcy receivers and federal equity receivers such as Janvey. Unlike bankruptcy receivers, federal equity receivers stand exclusively in the shoes of the entities in receivership and only have standing to bring the claims of those entities. Any argument that Janvey is "close enough" to a bankruptcy receiver to trigger the exception would require this Court to disregard the plain and unambiguous language of the Policy in violation of well-settled rules of contract construction.

Finally, should the Court determine that the insured versus insured exclusion is ambiguous—it is not—this Court cannot, as a matter of law, construe the provision against Underwriters and in favor of coverage at this stage. The traditional *contra proferentem* rule has no application where, as here, the insured is a sophisticated party who jointly participates in the negotiation of the policy. In fact, this Court has recognized that the sophisticated insured exception to the *contra proferentem* rule may apply to these Policies where, as here, there is evidence that the specific policy provision at issue was negotiated. Underwriters must be given an opportunity to present evidence of this negotiation (at the appropriate procedural stage) before ruling on whether the sophisticated insured exception applies. Thus, if this Court determines that

the insured versus insured exclusion is ambiguous, there is still a fact issue as to whether or not the sophisticated insured exception applies that precludes this Court from construing the provision against Underwriters.

## ARGUMENT

### A. The D&O Policy's Insured Versus Insured Exclusion Precludes Coverage.

The D&O Policy's insured versus insured exclusion precludes coverage for any claims brought against any insured "by or at the behest of Company" (which is defined to include all of the Stanford Entities). D&O Policy, Art. IV, cl. E. This Court's Receivership Order specifically grants the Receiver the "complete and exclusive control, possession, and custody of [the Stanford Entities]." Doc. 1130, Second Amended Order Appointing Receiver ¶ 4, *SEC v. Stanford Int'l Bank, Ltd.*, Case No. 3:09-cv-0298. Because the Receiver stands in the shoes and brings the claims of the insured Stanford Entities, the insured versus insured exclusion precludes coverage for the Receiver's Action. *See Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 190 (5th Cir. 2013) (noting that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors").

Indeed, numerous courts have held there is no legal distinction between a federal equity receiver and the entities in receivership. *See Wiand v. Schneiderman*, 778 F.3d 917, 923-25 (11th Cir. 2015) (holding that receiver for hedge funds that were part of Ponzi scheme was bound by arbitration agreement entered into by receivership entity); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (holding that a receiver "'has no greater rights or powers than the [receivership entity] itself would have'") (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990)); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003) (holding that receiver was bound by arbitration agreements entered into by the receivership entities "to the same extent

that the receivership entities would have been absent the appointment of the receiver"); *Shook v. U.S.*, 26 Cl. Ct. 1477, 1485 n.3 (Cl. Ct. 1992) ("In short, the receiver stands in the shoes of the corporation or person whose property is in receivership, with exactly the same rights and obligations with respect to such property as such person had at the inception of the receivership.") (internal quotation marks and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Olympia Holding Corp.*, No. 1:94-CV-2081, 1996 WL 33415761, at *7 (N.D. Ga. 1996) (holding that insured v. insured exclusion applied because "there is no legal distinction between [the insured debtor company] and [the] Trustee for the bankruptcy estate").

The Receiver nevertheless argues that the insured versus insured exclusion does not apply to his claims because although he "may stand in the shoes of [the Stanford Entities] for some purposes, it does not follow that he does so for all purposes." Doc. 62 (Receiver's Brief) at 7. The Receiver is wrong. The Fifth Circuit and numerous other federal courts have held that federal equity receivers stand exclusively in the shoes of the entities in receivership. *See Janvey,* 712 F.3d at 190 (5th Cir. 2013) (noting that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors"); *Liberte Capital Group, LLC v. Capwill,* 248 F. App'x. 650, 656 (6th Cir. 2007) (explaining that "when a receiver is appointed over a corporation, the receiver may only assert claims that could have been asserted by the corporation"). Indeed, the Receiver himself recognized as much in his Complaint against Haymon, noting that he was bringing the Receiver's Action against Haymon "standing in the shoes of STC." Receiver's Complaint ¶¶ 1, 172 ("[T]he Receiver, and the Committee as assignee from the Receiver, **standing in the shoes of STC**, have suffered hundreds of millions of dollars in losses as a proximate result of [Haymon and his co-defendants'] wrongful conduct.") (emphasis added).

The Receiver next contends that the insured versus insured exclusion does not apply because the term "Receiver" is not included in the definition of the term "Company" in the D&O Policy. This argument, however, fails for several reasons. <u>First,</u> although the term "Receiver" is not included in the definition of "Company," the various Stanford Entities in whose shoes the Receiver now stands are listed in the definition of the term Company. As explained above, there is no legal distinction between a federal equity receiver and the entity in whose shoes the receiver stands. Try as he might, the Receiver cannot step out of the shoes of the Stanford Entities to avoid application of the insured versus insured exclusion.

<u>Second,</u> the Receiver's argument ignores the plain language of the exception to the exclusion, which makes clear that the exclusion applies to claims brought by a receiver who steps into the shoes of an insured. Specifically, the insured versus insured exclusion carves out certain exceptions including one for claims brought by an "examiner, trustee, receiver, liquidator, etc. in a bankruptcy proceeding." If the insured versus insured exclusion did not apply to receivers generally, the more narrow exception for a receiver in bankruptcy would be superfluous. Under Texas law, contracts must be read as a whole so as to give meaning to all of their terms. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). The Receiver suggests that under his reading of the exclusion the carve-out for bankruptcy receivers still has meaning because it could be applied to receivers for individual directors or officers. However, the carve-out does not say that it applies only to the extent that "such Claim is brought by the examiner, trustee, receiver, liquidator, etc. *of an individual Director or Officer* in a bankruptcy proceeding." This Court cannot read words into the Policy that do not exist. Put simply, it is impossible to give meaning to the carve-out for receivers in bankruptcy without determining that

the exclusion applies to receivers for all insureds, including the Receiver standing in the shoes of the Stanford Entities.

Third, the Receiver's argument is completely contrary to the position he is taking in coverage litigation against Underwriters. As this Court is well aware, the Receiver and Underwriters are in litigation concerning whether the Receiver is entitled to recover as an insured under the Policies. The D&O Policy extends coverage for losses sustained by individual insureds or losses "sustained by the Company" (which is defined to include the Stanford Entities). D&O Policy, Art. I, cl. C. The Receiver is seeking coverage under the Policies on the basis that he is the "the Company." If this Court finds that the Receiver is not "the Company" for purposes of the insured versus insured exclusion, then the Receiver likewise is not "the Company" for purposes of the Policies' insuring provisions. Thus, the Receiver would not be entitled to any coverage under the Policies.

In a final head-scratching effort to avoid application of the insured versus insured exclusion, the Receiver—while conceding he is asserting claims "on behalf of" the Stanford Entities—maintains that his claims are not brought "by or at the behest of" the Stanford Entities. To the extent that this distinction between synonymous terms is even intelligible, the Receiver is wrong. The Receiver's Action against Haymon is an action "by" the Stanford Entities acting through the Receiver. As the Fifth Circuit explained in *Janvey*:

> [O]nce freed of his coercion by the court's appointment of a receiver, the corporations in receivership, through the receiver, may recover assets or funds that the principal fraudulently diverted to third parties . . . .

*Janvey,* 712 F. 3d at 190. Likewise here, the Stanford Entities are acting through the Receiver in pursuing claims against Haymon for purportedly breaching their fiduciary duties to the Entities.

### B. The Bankruptcy Exception to the Insured Versus Insured Exclusion is Inapplicable.

7

The exception for receivers in a bankruptcy proceeding does not apply here because, quite simply, the Stanford Receivership is not a bankruptcy proceeding. An equitable receivership is a distinct form of legal proceeding, wholly separate from a statutory bankruptcy proceeding. Among other differences, federal equity receivers have standing "to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." *Janvey,* 712 F.3d at 190. This Court has entered a stay of bankruptcy filings as part of its amended Receivership Order, and the Receiver has spent significant time opposing any efforts to convert the Receivership into a bankruptcy, explaining each time how conversion into a bankruptcy would hinder his recovery efforts.[7]

Nevertheless, the Receiver now asks this Court to ignore the plain and unambiguous language of the policy and apply the exception because the Receiver argues that the Stanford Receivership is "the equivalent to" a bankruptcy proceeding. *See* Doc. 62 (Receiver's Brief) at 11-12. Even setting aside the significant distinctions between an equity receivership and bankruptcy proceeding, the Receiver's argument fails because it would require this Court to read words into the Policy that do not exist. The bankruptcy exception applies to receivers "in a bankruptcy proceeding." It does not apply to receivers "in a bankruptcy proceeding *or the equivalent to* a bankruptcy proceeding." As the Receiver himself asserts, this Court cannot

---

[7] *See* Doc. 817, Receiver's Response Opposing Bukrinsky Motion for Relief From Injunction Against Involuntary Bankruptcy Filing, *SEC v. Stanford Int'l Bank Ltd.*, Case No. 3:09-cv-00298 (noting the distinctions between bankruptcy proceedings and receiverships and arguing that the Stanford Receivership is more efficient and cost-effective than bankruptcy and that public policy favors continuing the Receivership outside of bankruptcy). The Receiver also explains that his "best judgment is that a bankruptcy would be counter-productive and not in the best interests of Stanford investors and creditors." *Id.* at 3. The Receiver then lists the "significant reasons that bankruptcy continues to be an inferior means of addressing the many complex issues involved in untangling the massive fraud that lies at the heart of this case." *Id.* at 3-5. Among other things, the Receiver notes that "unlike a trustee in bankruptcy, the Receiver can take into account relative fault within a class of creditors, and fashion an equitable plan of distribution that does not treat all creditors within a class identically if they are not deserving of equal treatment." *Id.* at 4-5.

remake the parties' agreement by reading additional provisions into it that do not exist. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 127 (Tex. 2010). [8]

Additionally, the Receiver is simply wrong when he argues that construing the exception to the insured versus insured exclusion to only cover claims in a bankruptcy proceeding would render the term "receiver" meaningless because there are no receivers in bankruptcy proceedings. *See* Doc. 62 (Receiver's Brief) at 12. First, under the Bankruptcy Code, bankruptcy courts can appoint a receiver under certain circumstances. *See In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1133 (8th Cir. 1988) (affirming bankruptcy court's appointment of receiver "for the limited purpose of administering the mortgaged property pending disposition of [a] foreclosure proceeding"); *In re Memorial Estates, Inc.*, 797 F.2d 516, 520-21 (7th Cir. 1986) (same). Second, the territorial limits of the D&O Policy are global, which means the Policy covers claims from countries around the world, including many that appoint "receivers" in bankruptcy proceedings. For example, Stanford International Bank was headquartered in Antigua; an Antiguan bankruptcy court will, upon the filing of a bankruptcy petition, enter a "receiving order" under which "an official receiver shall be thereby constituted receiver of the property of the debtor." *See* Bankruptcy Act Para. 9, Laws of Antigua and Barbuda. The Antiguan bankruptcy receiver has broad powers, including the power to assert claims against former officers and directors of the bankrupt entity. *Id.* ¶¶ 64-65. Receivers also are appointed in bankruptcy proceedings in Venezuela and Mexico—two countries that were

---

[8] Moreover, under the maxim *expressio unius est exclusio alterius* (meaning the naming of one thing excludes another), by specifically stating that the insured versus insured exclusion does not apply to one type of receiver (a bankruptcy receiver) the D&O Policy is explicitly stating that the exclusion applies to other types of receivers (*i.e.*, equitable receivers). *See e.g.*, *Branson v. Greyhound Lines, Inc., Amalgamated Council Ret. & Disability Plan*, 126 F.3d 747, 758 (5th Cir. 1997) (applying maxim to interpretation of ERISA plan); *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc*., 734 S.W.2d 653, 655-56 (Tex. 1987) (applying principle of *expressio unius est exclusio alterius* to interpretation of contract).

home to numerous Stanford Entities.[9] In short, the exception to the insured versus insured exclusion could be applicable in several factual scenarios, none of which are present in this case.

### C. Contra Proferentem Does Not Apply Because Sophisticated Parties Negotiated the Specific Exclusions at Issue in this Case.

If the Court determines that the insured versus insured exclusion is ambiguous (it is not), this Court cannot, as a matter of law, construe the provision against Underwriters at this stage. As another Judge of this District held, the traditional rule of *contra proferentem* does not apply when sophisticated parties of equal bargaining power jointly negotiate an insurance policy. *Vought Aircraft Indust., Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814, 823 (Fitzwater, C.J.) (N.D. Tex. 2010) (noting that "[a]n exception to the general rule in favor of coverage is often made when corporate insureds with bargaining power equal to the insurer participate in drafting the insurance coverage"); *see also, In re Enron Corp. Securities, Derivative & ERISA Litigation*, 391 F. Supp. 2d 541, 578 (S.D. Tex. 2005) (noting that the doctrine of *contra proferentem* does not "apply where the contracts are between sophisticated parties of equal bargaining power, as in a corporation with counsel like Enron and its insurers"). Moreover, this Court has recognized that the sophisticated insured exception to the *contra proferentem* rule may apply to this Policy where there is evidence that the specific policy provision at issue was negotiated. *See* Doc. 43, Order, Underwriters v. Stanford et al., Case No. 3:09-cv-02206, at 4.

Where the sophisticated insured exception to the *contra proferentem* rule applies, the court cannot simply construe any ambiguous policy language against the insurer. *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1207 (5th Cir. 1991) (explaining that

---

[9] *See* Richard J. Cooper, Joel Moss, and Adam Brenneman, *Expedited Restructurings in the U.S. and Select Latin American and Caribbean Jurisdictions*, 7 Pratt's J. Bankr. L. 8 (Nov./Dec. 2011), at 690 (noting that a bankruptcy proceeding under Mexican law, known as a *concurso mercantile*, includes the appointment of a receiver by the court during the liquidation phase); Richard H.W. Maloy, *Comparative Bankruptcy*, 24 Suffolk Transnat'l L. Rev. 1 (Winter 2000), at 48-49 (noting that in Venezuela, creditors administer the bankruptcy estate of an insolvent company through a receiver).

by having its agent decide upon both the slip and the policy, the insured "forfeits any benefit from the policy drafter principle"); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.,* 540 F.2d 1257, 1261 (5th Cir. 1976) (finding principle of *contra proferentem* does not apply where "[i]n substance the authorship of the policy is attributable to both parties alike"). Instead, a fact-finder must ascertain the intent of the provision in question based on the underlying facts.

Here, Underwriters can and will present evidence that the specific exclusions at issue in this case were specifically negotiated between the parties.[10]  Thus, if this Court determines that the insured versus insured exclusion is ambiguous, there is a fact issue as to whether or not the sophisticated insured exception applies that precludes this Court from construing the provision against Underwriters and in favor of coverage at this time.

### D.  The PI Policy's Insured Versus Insured Provision Precludes Coverage.

The PI Policy's insured versus insured provision, similar to the D&O Policy, also precludes coverage for the Receiver's Actions against the Plaintiffs.  Specifically, the PI Policy provides that "Underwriters shall not be liable for Claims made against one Assured to the advantage of any other Assured."  PI Policy, Art. VII, cl. E. The PI Policy defines "Assured" to include the Stanford Entities, including STC, and their "Directors, Officers and Employees." PI Policy, Art. II, cl. B, cl. C, and Schedule of Insureds.  Thus, the PI Policy excludes claims against a director or officer of a Stanford Entity if the claim is made for "the advantage of any [Stanford Entity]."  The Receiver argues that any action against the Plaintiffs will not benefit the Stanford Entities, but only the defrauded investors and creditors.  While the ultimate beneficiary of the Receiver's actions may be the investors/creditors of the Stanford Entities, the immediate recovery benefits the corporation itself, triggering the exclusion and preventing coverage.

---

[10] This Court already has ruled that the Stanford Entities were sophisticated parties.  Doc. 43, Order at 4, *Certain Underwriters at Lloyd's of London, v. Stanford,* Case No. 3:09-cv-02206.

11

*Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) ("[A]nything that helps a corporation helps those who have claims against its assets.").

## *Conclusion*

Underwriters' Motion to Dismiss Haymon's First Amended Complaint should be granted.

Date: February 12, 2016

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ Daniel McNeel Lane, Jr.
Daniel McNeel Lane, Jr. (SBN 00784441)
nlane@akingump.com
Manuel Mungia, Jr. (SBN 24060310)
mmungia@akingump.com
Matthew E. Pepping (SBN 24165894)
mpepping@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Phone: (210) 281-7000
Fax: (210) 224-2035

-and-

Eric Gambrell (SBN 00790735)
egambrell@akingump.com
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Phone: (214) 969-2800
Fax: (214) 969-4343

Attorneys for Underwriters

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record were served this 12th day of February, 2016 via the Court's electronic filing service.

           /s/ Daniel McNeel Lane, Jr.
           Daniel McNeel Lane, Jr.